# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BERNARD DANDRIDGE,<br>Petitioner,<br><br>v.<br><br>PAUL SCHULTZ,<br>Respondent. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>NO. 07-1531 |

**Memorandum and Order**

YOHN, J.                                                                                               December ___, 2007

     Presently before the court is petitioner Bernard Dandridge's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Dandridge is currently serving a fifteen-month federal sentence.  In his habeas petition, he argues that time he served on vacated, but reinstated, state sentences should be credited toward his federal sentence, entitling him to immediate release.

     United States Magistrate Judge Jacob P. Hart reviewed the petition and subsequent filings and issued a Report and Recommendation to deny the petition.  Thereafter, Dandridge filed objections to the Report and Recommendation.  After conducting a de novo review of the Report and Recommendation, and upon careful consideration of the parties' submissions, this court will approve and adopt the Report and Recommendation and will dismiss the petition for failure to exhaust administrative remedies and because habeas relief is not warranted on the merits.

I.      **Factual and Procedural Background**[1]

On September 8, 1998, Dandridge, along with six co-conspirators, was charged in the Eastern District of Pennsylvania with conspiracy to engage in unlicensed dealing in firearms and related offenses in a twenty-count indictment. (Indictment No. 98-443.) On January 15, 1999, he pled guilty to conspiracy and five of the other charges. He was then sentenced, on April 27, 1999, to a term of seventy months' imprisonment to be followed by three years on supervised release. (J., No. 98-443, Apr. 27, 1999.) He was transferred to the custody of the BOP on June 23, 2000, and was released from prison on February 1, 2005. (Pub. Info. Data, Fed. Register No. 52187-066.) On that date, he began serving his term of supervised release.

Dandridge was subsequently arrested in Mount Laurel, New Jersey on October 26, 2005. He was charged with the commission of state crimes in both Burlington and Camden counties, and he spent the night in state custody before being released on October 27, 2005. He pled guilty to theft by deception in Burlington County on May 1, 2006. The case was transferred to Camden County for sentencing. Dandridge was re-arrested on June 16, 2006, and held in the Camden County Detention Center. On July 14, 2006, he was sentenced on the Camden County charges to a term of four years' imprisonment to run concurrently with any federal sentence (which had not yet been imposed).

On August 2, 2006, Dandridge was temporarily transferred to federal custody pursuant to

---

[1] The background information is drawn largely from two memoranda created by Federal Bureau of Prisons ("BOP") officials, attached as Exhibit B to the Declaration of Darrin Howard, Attorney Advisor employed by the BOP and assigned to the Federal Detention Center in Philadelphia, Pennsylvania ("FDC Philadelphia"). (*See* Memorandum from Scott Farr, Mgmt. Analyst, BOP, to Darrin Howard, Attorney Advisor (June 20, 2007); Memorandum from John W. Wilson, Legal Instruments Examiner, BOP Designation & Sentence Computation Ctr. (June 21, 2007).)

a writ of habeas corpus ad prosequendum.[2]  Dandridge was then sentenced in federal court for violating the terms of his supervised release.  His supervised release was revoked and he was sentenced to a term of fifteen months' imprisonment to run *consecutively* to any state sentence.  (Minute of Proceedings, No. 05-0791, Docket No. 8, Aug. 2, 2006.)  After his federal sentencing, Dandridge was returned to state custody to serve the balance of his state sentences.  On September 18, 2006, he was sentenced on the Burlington County charges to five years' imprisonment "aggregated" with the previously imposed Camden County sentence (i.e., the state sentences would be served concurrently).

The state court then vacated both of his state sentences, but not his underlying convictions, on March 29, 2007.  (Order, Indictments No. I-310-01-06, Z-392-03-06.)  He was transferred on that date to the custody of the U.S. Marshals to begin serving his fifteen-month federal sentence for violating the terms of his supervised release, since he was no longer under a state sentence.  (Pub. Info. Data, Fed. Register No. 52187-066.)

Upon his arrival at the FDC Philadelphia on March 29, 2007, Dandridge made an informal request, dated April 1, 2007, seeking federal credit for his time spent in state custody from June 16, 2006 to "the present."  (Pet. for Writ of Habeas Corpus Ex. A)  He noted, "That time has not been applied to my state sentence because my state sentence was vacated." (*Id.*)  An FDC Philadelphia official responded:

> At this time you do not have a sentence computation and we no longer do computations at this institution.  The marshals will have to forward your file to the Texas designation center for your time to [be] computed.  I have asked to have your

---

[2] This writ is "used in criminal cases to bring before a court a prisoner to be tried on charges other than those for which the prisoner is currently being confined."  Blacks Law Dictionary 728 (8th ed. 2004).

package sent to [the] Texas [designation center].

(*Id.*)  Dandridge alleges that he was also told "that it would take 2 to 3 months for him to get designated."  (Pet. for Writ of Habeas Corpus 2.)

Apparently Dandridge was then returned to state court for resentencing.  The state court reinstated Dandridge's state sentences on April 23, 2007.  With respect to the Burlington County conviction, he was sentenced to "a term of 5 years . . . to run concurrently with [f]ederal [v]iolation of [p]robation."  (Camden County J., Indictment No. Z-392-03-06, Apr. 23, 2007.)  With respect to the Camden County conviction, he was sentenced to "a term of 4 years . . . to run concurrently with the sentenced imposed under Burlington County Indictment 06-03-392 as well as his [f]ederal [v]iolation of [p]robation."  (Camden County J., Indictment No. I-310-01-06, Apr. 23, 2007.)  The state court directed that he was to receive credit for the 313 days he already served in state custody:  1 day served on October 27, 2005; 29 days served between June 16, 2006 and July 13, 2006; and 283 days served between July 14, 2006 and April 22, 2007.  (*Id.*)  Dandridge was then returned to a federal facility to complete his federal sentence.  He apparently had been paroled on his state sentences.

Dandridge's sentence computation, last updated in the court's record on June 21, 2007, shows that the BOP started his sentence on March 29, 2007 and has given him no credit for time served.  (Pet. for Writ of Habeas Corpus Ex. C.)  Dandridge alleges that "[t]he BOP originally gave Dandridge credit for the time he served on the state sentence that was vacated.  However, after Dandridge was re-sentenced in state court the BOP took back the credit that was previously given."  (Pet'r's Objections 5.)

On April 16, 2007, Dandridge filed the instant petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2241, alleging that the time served pursuant to his state sentences should be credited toward his federal sentence, entitling him to immediate release from federal custody.[3]

## II.     Standard of Review

Where a habeas petition has been referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), this court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). After conducting such a review, this court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* Magistrate Judge Hart found that Dandridge's habeas petition should be dismissed because Dandridge failed to exhaust administrative remedies and because, even if he had exhausted his remedies within the BOP, the BOP did not abuse its discretion by failing to credit the time he spent in state prison against his federal sentence.

Dandridge has filed objections to the magistrate's report with respect to both exhaustion and the merits. Dandridge argues first that the court should excuse his failure to exhaust because administrative appeals would have been futile. With respect to the merits, Dandridge argues that he is entitled to credit for the time he had served in state court as of the time of his transfer to

---

[3] When Dandridge filed his habeas petition, he was incarcerated at the FDC Philadelphia, which is within the jurisdiction of the Eastern District of Pennsylvania. While this petition was pending, he was transferred to the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"), which is within the District of New Jersey. Dandridge's involuntary transfer out of this district does not defeat this court's jurisdiction. *See Barden v. Keohane*, 921 F.2d 476, 477 (3d Cir. 1990) (retaining jurisdiction over the habeas petitioner who had been involuntarily transferred to another federal prison outside the court's jurisdiction). The government's motion to amend the caption to include the warden of FCI Fairton has been granted. (Order, Docket No. 10, July 31, 2007.)

federal custody because by that time the state court sentences had been vacated; thus, double credit was not a possibility. Furthermore, Dandridge argues that BOP's failure to give him credit for the time he served in state court violates New Jersey's right, as a sovereign, to give Dandridge the punishment it saw fit.

The court addresses these issues de novo.

### III.  Discussion

The court's power to grant a writ of habeas corpus is provided by 28 U.S.C. § 2241. Section 2241 applies when a prisoner challenges the term of his custody. *Barden*, 921 F.2d at 478. The court "may correct an error by the BOP through a writ of habeas corpus where that error is fundamental and carries a serious potential for a miscarriage of justice." *Allen v. Nash*, 236 F. App'x 779, 782 (3d Cir. 2007). Here, however, there is no error because, even if Dandridge were to exhaust his administrative remedies, he could not show that the BOP abused its discretion in failing to give him credit for his time served in state court.[4]

#### A.   Failure to Exhaust Administrative Remedies

"Although there is no statutory exhaustion requirement attached to § 2241, [the Third Circuit has] consistently applied an exhaustion requirement to claims brought under § 2241." *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). The administrative remedial procedures for

---

[4] When a habeas petitioner has not exhausted his administrative remedies, the inquiry may end there. A district court may, however, "deny a claim on its merits despite non-exhaustion 'if it is perfectly clear that the applicant does not raise even a colorable federal claim.'" *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992) (quoting *Granberry v. Greer*, 481 U.S. 129, 135 (1987)).

federal prisoners are set forth at 28 C.F.R. §§ 542.10 through 542.19.  Generally, an inmate should first present an "issue of concern" to prison staff for informal resolution.  *Id.* § 542.13.  If the matter cannot be resolved informally, the prisoner may file a complaint with the warden within twenty days of the date on which the basis of the complaint occurred.  *Id.* § 542.14.  If the inmate is unsatisfied with the warden's response, the inmate may file an appeal with the regional director within twenty days of the date of the warden's response.  *Id.* § 542.15.  The final appeal, which must be filed within thirty days of the date of the regional director's response, is to the BOP's Office of General Counsel.  *Id.*

Dandridge completed only the first step of this procedure before filing his petition: although he submitted an informal request asking for credit toward his prison term (Pet. for Writ of Habeas Corpus Ex. A), he did not pursue his request through the various levels of appeal. (*See* Decl. of Darrin Howard ¶ 8, June 25, 2007 ("Following a search of the indexes for any administrative remedy filed by inmate Dandridge, I determined he had not exhausted his available administrative remedies on any issue raised in this civil action.").)  Dandridge does not deny this.  Therefore, Dandridge has not exhausted his administrative remedies.

Although Dandridge acknowledges that he did not exhaust administrative remedies, he argues that this court should excuse that failure because "further" appeals would have been futile, "considering that [Dandridge's] request challenged long-standing statutory interpretation by [the BOP]" (Pet'r's Objections 2).  In support of his argument, Dandridge cites *United States v. Browning*, 761 F. Supp. 681, 683 (C.D. Cal. 1991), in which the district court excused the petitioner's failure to exhaust, finding that further appeals would be futile because the petitioner was challenging the BOP's longstanding statutory interpretation.  Unlike in the instant case, the

petitioner in *Browning* had appealed the BOP's denial of credits for time served to the Western Regional Office—i.e., he had pursued his appeal through the second formal level. Furthermore, the petition in that case clearly challenged a longstanding interpretation by the BOP—its definition of "custody" as used in 18 U.S.C. § 3568,[5] codified in a BOP internal agency guideline. *Id.*

In the instant case, however, Dandridge filed his habeas petition before even receiving a sentence computation from the BOP. He filed it before engaging the administrative appeals process at all. Furthermore, Dandridge does not actually challenge the BOP's interpretation of § 3585(b) as contained in its Program Statement No. 5880.28(c)(1)(a)(2).[6] Rather, he argues solely

---

[5] 18 U.S.C. § 3568 was amended and recodified at 18 U.S.C. § 3585(b).

[6] The BOP's Sentence Computation Manual, Program Statement No. 5880.28(c)(1)(a)(2), at 1-17 to 1-18 (1999) [hereinafter BOP Program Statement No. 5880.28], provides:
> Credit will not be given for any portion of time spent serving another sentence regardless of whether the sentence is federal, state, or foreign. The following exceptions apply:
> (a) Time spent serving another foreign or state sentence that is vacated may be creditable as prior custody time credit provided the sentence was not vacated merely for resentencing. Any such time which is credited must be time spent after the commission of the federal offense. If a vacated state or foreign sentence results in a re-trial and subsequent resentencing, any credit applied to that resentencing must be removed from the federal sentence computation, provided the inmate has not yet been released from that sentence.
> (b) Time spent serving another federal, foreign or state sentence that is vacated merely for resentencing shall not have any effect on the SRA sentence computation until such time as the inmate is resentenced. If the resentencing results in a term which is less than the time the inmate has already served on the vacated sentence, the excess time not now credited to any other sentence shall be credited to the SRA term provided it was time spent after the commission of the federal offense.

BOP "Program Statements" are "internal agency guideline[s]" that are "akin" to interpretive rules not requiring notice and comment. *Reno v. Koray*, 515 U.S. 50, 61 (1995).

In this case, it is unclear whether Dandridge's state sentences were vacated "merely for resentencing." In his objections to Magistrate Judge Hart's Report and Recommendation, Dandridge argues that the state sentences were vacated "due to the state court violating its plea

8

that "[t]he BOP incorrectly used the BOP program statement . . . in denying Dandridge credit for the time he served on his vacated state sentence."  He believes that he meets all the requirements of the exceptions in the program statement to the rule that "[c]redit will not be given for any portion of time spent serving another sentence."  (Pet'r's Objections 5 (citing BOP Program Statement No. 5880.28(c)(1)(a)(2).)  Thus, Dandridge is not, in fact, challenging a longstanding BOP interpretation.  Therefore, Magistrate Judge Hart correctly concluded that Dandridge failed to exhaust his administrative remedies.

**B.     Merits**

Magistrate Judge Hart concluded that BOP did not abuse its discretion "by following the intention of the federal court and by failing to credit Dandridge's time in state prison against his federal sentence."  (Report & Recomm. 9.)  Dandridge objects to this conclusion and argues that, "[w]hen the BOP amended Dandridge's [sentence] computation, taking the credit they gave, . . . they ultimately made the state court's sentence consecutive when it was expressly made concurrent, disallowing the state's ability to give whatever punishment it deemed fit, violating the dual sovereignty doctrine."  (Pet'r's Objections 5.)

The Bureau of Prisons has the authority to compute federal sentences in accordance with 18 U.S.C. § 3585.  *See United States v. Wilson*, 503 U.S. 329, 335 (1992) ("[T]he Attorney General must continue to compute the credit under § 3585(b) as he did under the former § 3568."); *Allen*, 236 F. App'x at 782 ("The authority to calculate a federal prisoner's period of

---

agreement thus violating Dandridge's constitutional rights."  (Pet'r's Objections 3.)  The state court's reason for vacating the sentences is not in the record before me.

incarceration for the sentence imposed and to provide credit for time served is delegated to the Attorney General, who acts through the BOP."). Section 3585(b) provides:

> Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

Dandridge's federal sentence commenced on March 29, 2007, when he was released by the New Jersey officials and taken into federal custody. *See* 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served."). Prior to this time, he was in "official detention" in New Jersey state prison serving his state sentences.

Dandridge's time in state custody prior to the vacation of his state sentences has "been credited against another sentence," however. The last clause of § 3585 limits "an award of credit for time served prior to the imposition of a federal sentence under section 3585(b) to instances where the time period was not spent in service of a previously imposed sentence and thus had not been credited against that earlier sentence." *Rios v. Wiley*, 201 F.3d 257, 272 (3d Cir. 2000). The provision prohibits "double credit." *Id.* If Dandridge's vacated state sentences had not been reimposed, he would have a colorable claim that the time should be applied to his federal sentence. *See Kayfez v. Gasele*, 993 F.2d 1288, 1290 (7th Cir. 1993) ("[I]t would be unreasonable to consider as a '[credit] against another sentence,' an allowance of credit against a vacated sentence."). But when his state sentence was reimposed, the state court judge gave him credit against his state sentence for the 313 days he had previously spent in state custody.

10

(Camden County Judgment of Conviction, Indictment No. 310-01-06, Apr. 23, 2007.)  Applying the same credit to the federal sentence would result in double credit.  The BOP did not abuse its discretion in not crediting Dandridge's federal sentence with the time he had served in state prison.

Dandridge's dual sovereignty argument does not compel a different conclusion.  The dual sovereignty doctrine provides that, "where both sovereigns legitimately claim a strong interest in penalizing the same behavior, they have concurrent jurisdiction to vindicate those interests and neither need yield to the other."  *United States v. Pungitore*, 910 F.2d 1084, 1105 (3d Cir. 1990).  In support of his argument, Dandridge cites *United States v. Clayton*, in which the Ninth Circuit addressed the "narrow issue . . . whether a federal district judge may direct that a federal sentence be served consecutive to a state sentence *not yet imposed*."  927 F.2d 491, 492 (9th Cir. 1991) (emphasis added).  The court held that "a federal district court does not have the authority to direct that a federal sentence be served consecutive to a state sentence *not yet imposed*.  *Id.* at 493.  It noted, however, that "had the district court delayed sentencing until the state sentence had been imposed, the court could have exercised discretion to impose a consecutive sentence."  *Id.*  When Dandridge was sentenced in federal court on August 8, 2006, he had already been sentenced in New Jersey state court.  The state sentence had been imposed.  Thus, the federal sentencing judge acted within the scope of his authority in ordering his federal sentence to be served consecutively to his state sentence.

The *Clayton* court also was troubled by the fact that the first-imposed federal sentence, which the district court sought to make consecutive to a later-imposed state sentence, "if given effect, would preempt the right of the state to apply its own laws on sentencing for violation of

11

state criminal law." *Id.* (quoting *United States v. Eastman*, 758 F.2d 1315, 1318 (9th Cir. 1985)). In *Clayton*, the federal sentence was twenty-four months; the later-imposed state sentence was only seventeen months, *id.* at 492, meaning that if the federal court were not bound by the state court's order that the sentences run concurrently, the state order would have no effect. In the instant case, to the contrary, Dandridge's state sentence was imposed first; the federal sentence was imposed later, meaning that if the state court were not bound by the federal court's order that the sentence run consecutively, the federal sentence would have no effect. Therefore, *Clayton* does not suggest a different outcome.

  Finally, as Magistrate Judge Hart correctly noted, a state court's intention that a state sentence run concurrently with a federal sentence is not binding on the BOP's sentence calculation. *See Barden*, 921 F.2d at 483 & n.1 (explaining the BOP's discretion); *Allen*, 236 F. App'x at 782 (same).

**III.**   **Conclusion**

  For the foregoing reasons, I find that Dandridge failed to exhaust his administrative remedies, and, even if he had, he would not be entitled to habeas relief on the merits. I will approve and adopt the Report and Recommendation and will dismiss the petition.

  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERNARD DANDRIDGE, : | |
| Petitioner, : | CIVIL ACTION |
| : | |
| v. : | NO. 07-1531 |
| : | |
| PAUL SCHULTZ, : | |
| Respondent. : | |

## Order

YOHN, J.

And now, this _____ day of December 2007, upon careful consideration of petitioner Bernard Dandridge's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, petitioner's addendum thereto, the government's responses, the Report and Recommendation of United States Magistrate Judge Jacob P. Hart, and petitioner's objections thereto, it is hereby ORDERED that:

1. Petitioner's objections are OVERRULED.

2. The Report and Recommendation of United States Magistrate Judge Jacob P. Hart is APPROVED and ADOPTED.

3. The petition for writ of habeas corpus is DISMISSED and DENIED.

4. The Clerk shall CLOSE this case for statistical purposes.

_____s/ William H. Yohn Jr._____
William H. Yohn Jr., Judge